Phillip BASS, Petitioner,

v.

Charles SCULLY, Warden, Green Haven Correctional Facility, Robert Abrams, Attorney General of the State of New York, and District Attorney of White Plains, New York, Respondents.

No. 82 Civ. 3576(MEL).

United States District Court,
S.D. New York.

May 19, 1983.

William M. Kunstler, Robert H. Gombiner, Mark B. Gombiner, New York City, for petitioner.

Carl A. Vergari, Dist. Atty. of Westchester County, White Plains, N.Y., for respondents; Terry Jane Ruderman, Gerald D. Reilly, Asst. Dist. Attys., White Plains, N.Y., of counsel.

LASKER, District Judge.

Phillip Bass petitions for a writ of habeas corpus. In a decision dated February 17, 1983, 556 F.Supp. 778, familiarity with which is assumed, Bass' contention as to the impropriety of his being bound and gagged during the voir dire was rejected. Bass' remaining claim relates to the constitutionality of the admission of an in-court identification. Bass contends that the identifica-

tion should not have been admitted because it was based on an unduly suggestive identification technique and because it did not have a reliable independent basis.

The identification at issue was made by Glenn Walsh, an employee of the supermarket that Bass was charged with having robbed. According to Walsh's testimony at the pre-trial identification hearing, at approximately noon on the date of the crime Bass approached him, held a gun to his face and directed him to walk to the supermarket office. This encounter was face-to-face and lasted between ten and twenty seconds. For the next five minutes, Walsh glanced at Bass a few times as the robbery was taking place.

After the robbery, the police were called and arrived at the supermarket straight away. Walsh was asked for a description of the robber; his response was, "I couldn't recollect." (Transcript of Hearing at 127).

A short time later, three suspects were apprehended. Walsh was brought to the police station and viewed the three suspects from behind a two-way mirror. He identified Bass as the person who had held the gun to his face.

The trial court held that the line-up procedure, in which Walsh looked only at the individuals who were suspected of having committed the robbery, was "definitely suggestive." (Transcript at 169). Nevertheless, he concluded that Walsh was able to make an identification based solely upon his own independent observations of Bass, and that, accordingly, the suggestive line-up would not taint an in-court identification. (Transcript at 170).

The constitutional standards governing the admission of identification testimony are set forth in *Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). *Biggers* establishes a two-step inquiry for analyzing identification issues: first, whether the pretrial identification procedures were unduly suggestive; and second, whether the suggestiveness of the identification procedures is outweighed by factors indicating an independent, reliable source for the identification.

■ The trial court found that the identification procedures used by the police were "definitely suggestive," and, accordingly, we turn to the second step: an analysis of the factors pertinent to reliability. As stated in *Neil v. Biggers,* 409 U.S. at 199–200, 93 S.Ct. at 382, those factors are:

"the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

■ Walsh had an adequate opportunity to view the criminal at the time of the crime. The two men were face to face—indeed almost eyeball to eyeball—for ten to twenty seconds. For the next five minutes, during which time Walsh glanced briefly at the criminal a few times, they were about seven feet apart. A twenty to thirty second view is "much more than a fleeting glance, as anyone who watches the second hand of a clock sweep by for that period can attest." It is "time enough for [a] burglar's image to become indelibly seared in [the victim's] memory." *United States ex rel Phipps v. Follette,* 428 F.2d 912, 916 (2d Cir.1970) (Friendly, J.).

Walsh's degree of attention to a man who held a gun to his head can be assumed to have been high. The length of time between the crime and confrontation was relatively short: approximately an hour elapsed between the robbery and the line-up. No evidence appears in the record regarding the level of certainty demonstrated by the witness at the confrontation.

The only factor which weighs against a finding of reliability is the fact that, when asked by the police for a description of the criminal prior to the line-up, Walsh answered, "I couldn't recollect."

Walsh's inability at the time to recollect the robber's features is not necessarily fatal—it may, for example, indicate only a momentary reaction to stress. However, even assuming that his inability to give a

prior description raises a serious question, the claim fails. Our view of the reliability of the identification is fortified by the conclusions of the trial judge who heard the witness' testimony. Deference to the trial court is particularly appropriate in the instant action, in view of the care and discrimination with which the trial judge decided the identification questions: he found that the procedure utilized by the police was unduly suggestive, and he suppressed another witness' identification testimony because he found it insufficiently reliable. (Transcript at 169).

■ Accordingly, we conclude that Bass' constitutional rights were not violated by the introduction of Walsh's identification. The petition is denied. A certificate of probable cause is denied as to the identification issue and granted as to the propriety of the binding and gagging.

It is so ordered.