James L. HAWKINS, Appellant,

v.

UNITED STATES, Appellee.

No. 83–417.

District of Columbia Court of Appeals.

Submitted June 27, 1984.

Decided July 10, 1984.*

* The decision in this case was originally issued as an unpublished Memorandum Opinion and Judgment. It is now being published by direction of the court.

Stephen J. Cribari, Washington, D.C., appointed by this court, was on the brief for appellant.

Linda D. Turner, Asst. U.S. Atty., Washington, D.C., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, and Thomas J. Tourish, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BELSON and ROGERS, Associate Judges, and PAIR, Associate Judge, Retired.

PER CURIAM:

Appellant appeals his conviction of one count of possession of a controlled substance—cocaine, codified at D.C.Code § 33–541(d) (Supp.1984), on the grounds that (1) the trial court erred in permitting a police expert witness to testify concerning the significance of various chemicals and paraphernalia found during the search of appellant's bedroom; (2) the expert's testimony regarding a usable amount of cocaine was not credible and therefore there was insufficient evidence to support his conviction; and (3) references to the weapons seized from the same places as the drugs were prejudicial and should have been excluded. We affirm.

## I.

On February 20, 1982, at approximately 1:00 p.m., two detectives of the Metropolitan Police Department executed a search warrant at 3406 Twenty-third Street, Southeast. The officers discovered appellant and a friend in an upstairs bedroom. During a search of the bedroom, the officers discovered a packet of white powder and a shotgun under the bed. They also discovered several packages of white powder elsewhere in the room, and in a hole in the floor of the bedroom closet, a brown bottle containing a white powder, a revolver, measuring spoons, and several one dollar bills covered with a white residue. Chemical analysis revealed that the powder found under the bed contained eleven percent cocaine; the other powders seized contained substances that were either not controlled substances or only trace quantities of controlled substances. Appellant was charged with possession of the cocaine retrieved from under the bed.

At trial, the detectives testified about all the items seized during the search. A chemist testified to the quantity and contents of each of the powders.[1] Detective Johnny St. Valentine Brown qualified as an expert on the use and sale of cocaine, and testified that approximately 200 milligrams of a substance, eleven percent of which was cocaine, was a usable amount of the drug. On cross-examination he testified that 201 milligrams of a powder containing cocaine is a usable amount "regardless" of the proportions "because the total mass is utilized." He further explained that "[the

---

1. The package from under the bed contained 201 milligrams of powder, 22 milligrams of which were cocaine and the rest was tetracaine. The other packages contained manitol, quinine hydrachloride, dextrose, tetracaine, anositol and quinine. Some of the other packages contained "traces" of heroin, cocaine, quinine and tetracaine.

powder] would be a usable amount in the sense that no one utilize[s] or administer[s] pure cocaine. It is always diluted with cutting reagents." Detective Brown testified, without objection, to the use of the various substances seized from the bedroom as "cutting reagents" to dilute cocaine and heroin. He also identified some of the packages of white powder seized from the bedroom as the type of packaging frequently used to distribute cocaine and heroin.

## II.

Appellant challenges Detective Brown's testimony about the use of the various substances found in the house as "cutting reagents." This was not "other crimes" evidence since possession of these substances is legal. Nevertheless, appellant contends that the testimony was unduly prejudicial because it tended to suggest he was engaged in the sale and distribution of drugs when he was charged only with possession. The government contends that the evidence was probative of appellant's knowledge of the existence of the drugs under the bed because the other substances and packages were found in the open in various parts of the room.

■ Whether evidence should be excluded as more prejudicial than probative is a decision committed to the sound discretion of the trial court. *See Willcher v. United States,* 408 A.2d 67, 75 (D.C.1979) (evidence may be excluded when prejudice exceeds probative value; weighing process within the discretion of trial court). Similarly, whether expert testimony on a matter should be admitted is also for the trial court's discretion. *Brooks v. United States,* 448 A.2d 253, 258 (D.C.1982). The standard for expert testimony is

(1) the subject matter 'must be so distinctively related to some science, profession, business or occupation *as to be beyond the ken of the average layman* [emphasis added]'; (2) 'the witness must have sufficient skill, knowledge, or experience in that field or calling as to make

it appear that his opinion or inference *will probably aid the trier in his search for truth* [emphasis added]'; (3) expert testimony is inadmissible if the state of the pertinent art or scientific knowledge does not permit a reasonable opinion to be asserted even by an expert.'

*Dyas v. United States,* 376 A.2d 827, 832 (D.C.) (quoting MCCORMICK ON EVIDENCE, § 13 at 29–31 (E. Cleary, 2d ed. 1972), *cert. denied,* 434 U.S. 973, 98 S.Ct. 529, 54 L.Ed.2d 464 (1977).

■ Since there was no objection to this evidence—either as a threshold matter (more prejudicial than probative) or as an evidentiary matter (a question of the method of proof)—the trial court did not have an opportunity to state its reasons on the record, and appellant must demonstrate "plain error." *Watts v. United States,* 362 A.2d 706, 709 (D.C.1979) (en banc). We find no plain error. The trial court could have concluded that the evidence of the dilutants was probative of appellant's knowledge of the presence of the drugs under the bed and that its probative value outweighed its prejudicial impact. *See Lewis v. United States,* 379 A.2d 1168, 1170 (D.C.1977) (evidence of narcotics paraphernalia, "since it is common knowledge that such items are concomitants of the crime with which appellants were charged," admissible in prosecution for possession of heroin). Having so determined, the trial court did not abuse its discretion in permitting the evidence to be identified by expert testimony under the test enunciated in *Dyas.* The use of these substances as dilutants is "beyond the ken of the average layman" and Detective Brown, having been qualified without objection as an expert in the sale and use of cocaine, possessed sufficient knowledge and experience to "aid the trier" on this issue.

■ Appellant also contends that Detective Brown's testimony concerning whether the cocaine was a "usable amount" was inherently incredible and therefore appellant's conviction cannot

stand. The government must prove that the cocaine was more than a mere trace and that it was a usable amount. *Edelin v. United States*, 227 A.2d 395, 399 (D.C. 1967). Detective Brown stated on direct examination that 201 milligrams of powder, eleven percent of which is cocaine, is a usable amount. Even assuming Detective Brown's testimony was ambiguous (insofar as he testified on cross-examination that no matter how much the cocaine was diluted, it was a usable amount), resolution of such ambiguity is for the jury. Viewing the evidence in the light most favorable to the government, *Hubbard v. United States*, 429 A.2d 1334 (D.C.), *cert. denied*, 454 U.S. 857, 102 S.Ct. 308, 70 L.Ed.2d 153 (1981), the evidence was sufficient to support appellant's conviction.

■ Finally, appellant contends that the testimony concerning the weapons discovered during the search was unfairly prejudicial. However, this evidence was admissible to explain the circumstances surrounding the search and the arrest. *See Toliver v. United States*, 468 A.2d 958, 960 (D.C.1983) and cases cited therein. Furthermore, since appellant admitted moving the shotgun from one location to another in the house shortly before his arrest, the testimony that the shotgun was recovered from the same place as the cocaine was relevant to his knowledge of the cocaine's existence under the bed. Therefore, there was no plain error in the admission of the testimony about the weapons.

Accordingly, the judgment below is

*Affirmed.*