Willie L. MINICK, Appellant,

v.

UNITED STATES, Appellee.

No. 83–1225.

District of Columbia Court of Appeals.

Argued Sept. 26, 1985.

Decided March 25, 1986.

Jennifer P. Lyman, Public Defender Service, with whom James Klein and Randy Hertz, Public Defender Service, Washington, D.C., were on brief, for appellant.

Curtis E. Hall, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell, Thomas J. Tourish, Jr., and Steven D. Gordon, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before PRYOR, Chief Judge, and MACK and BELSON, Associate Judges.

PER CURIAM:

Appellant, Willie L. Minick, was convicted after a jury trial of first-degree felony murder (D.C. Code § 22–2401 (1981)), and rape (id. § 22–2801). On appeal, his central contention is that certain physical evidence seized from his home at the time of his arrest should have been suppressed as fruits of an unlawful warrantless entry and arrest. Appellant also argues that the trial court committed reversible error by allowing certain allegedly prejudicial evidence to be admitted at trial.

I

■ Appellant's suppression argument was previously considered by this court in *Minick v. United States,* 455 A.2d 874 (D.C.) (*Minick I*), cert. denied, 464 U.S. 831, 104 S.Ct. 111, 78 L.Ed.2d 112 (1983). In that opinion, this court, sitting en banc, on a pretrial interlocutory appeal by the government,[1] reversed a decision of the trial court suppressing the evidence.[2] Relying primarily on principles set forth in *Dorman v. United States,* 140 U.S.App. D.C. 313, 435 F.2d 385 (1970) (en banc), we held that "exigent circumstances" justified a warrantless entry of Mr. Minick's home at the time of his arrest.

The government argues that in light of this earlier decision our consideration of the suppression claim is forestalled by operation of the "law of the case" doctrine. While this doctrine is most frequently cited in the trial court context, it is applicable to the instant context as well. That doctrine states that "once the court has decided a point in a case, that point becomes and remains settled unless or until it is reversed or modified by a higher court." *Kritsidimas v. Sheskin,* 411 A.2d 370, 371 (D.C.1980); see also *United States v. Singleton,* 245 U.S.App.D.C. 156, 158–59, 759 F.2d 176, 178–79 (1985). Clearly, a panel of this court is not a "higher court" than this court sitting en banc. Indeed, there is nothing to prevent this court from changing its mind en banc about a question upon which it has previously ruled. However, according to well established procedures, one division of this court may not overrule

---

1. *See* D.C. Code § 23–104(a)(1) (1981). Thus, because the first appeal was brought *before* trial, pursuant to subsection (a)(1), subsection (e) of section 23–104 does not apply here. Subsection (e) provides in pertinent part that interlocutory government appeals, and decisions rendered thereto, "shall not affect the right of the defendant, in a subsequent appeal from a judgment of conviction, to claim as error reversal by the trial court on remand of a ruling appealed from during trial." A close reading of subsection (e) makes clear that the above quoted language only applies to interlocutory appeals "tak-
en pursuant to subsection (b) or (d) *during trial,*" (emphasis added), and not those taken pursuant to subsection (a)(1), at the pretrial stage. *See Leasure v. United States,* 458 A.2d 726, 730 n. 4 (D.C.1983) (applying subsection (e) where earlier appeal was taken during trial pursuant to subsection (d)).

2. The facts underlying the suppression issue are set forth at length in *Minick I* and need not be repeated here.

a prior decision of another division of this court. *M.A.P. v. Ryan*, 285 A.2d 310, 312 (D.C.1971).

■■■ The doctrine of law of the case conserves judicial time and resources by discouraging "multiple attempts to prevail on a single question," and is limited in application only where (1) the first ruling has little or no finality, or (2) the first ruling is clearly erroneous in light of newly presented facts or a change in substantive law. *Kritsidimas v. Sheskin, supra*, 411 A.2d at 372; *see United States v. Davis*, 330 A.2d 751, 755 (D.C.1975). Upon reviewing the record and appellant's contentions, we conclude that the instant appeal is not subject to either of the aforementioned limitations. Accordingly, we agree with appellee that the "law of the case" doctrine is applicable here.

Appellant does not dispute the finality of the en banc opinion, nor does he set forth any newly discovered facts. Rather, the gravamen of his argument is that the en banc court "misapplied" or "ignored" the principles of law set down in the primary case upon which it relied. We wholly disagree, and in any event, the established tenets outlined above prevent us from reviewing the en banc court's opinion in this case for such alleged deficiencies.

In the alternative, appellant maintains that *Welsh v. Wisconsin*, 466 U.S. 740, 104 S.Ct. 2091, 80 L.Ed.2d 732 (1984), decided after the en banc decision was entered, is a controlling "change in substantive law," relevant to this issue, thus, preventing application of the law of the case doctrine. While *Welsh* addresses the issue of when a warrantless entry for purposes of arrest may be justified on grounds of exigent circumstances, we do not believe that that decision dictates a different result than the one reached by the en banc court in *Minick I*, on the Fourth Amendment question presented.

In *Welsh*, the Supreme Court held that the warrantless, nighttime entry of the defendant's home to arrest him for a civil, nonjailable, traffic offense was prohibited by the Fourth Amendment. The Court concluded that the factors which must be present to allow application of the exigent circumstances exception to the Fourth Amendment proscription against warrantless felony arrests in the home, were not present under the particular facts of that case. *Id.*, 104 S.Ct. at 2099–100. While setting down no hard and fast rule, the Court emphasized that an important factor to be considered in the "exigent circumstances calculus" is the gravity of the underlying offense for which the arrest is being made. *Id.* at 2098. Indeed, the result in *Welsh* turned on the minor nature of the offense committed—a noncriminal civil forfeiture offense for which no imprisonment was possible. *Id.* at 2100.

The holding in *Welsh* is not in conflict with the result reached in *Minick I*. In *Minick I*, in addition to other factors creating exigency, such as the evanescent nature of the physical evidence that the police sought to recover, the underlying offenses involved—rape and murder—could hardly have been more grave. Accordingly, we believe this court's analysis and resolution of the Fourth Amendment issue presented in *Minick I* is in substantial agreement with the principles of law set out in *Welsh*.

As appellant has presented no new factual or legal basis for his argument, we find that the en banc court's ruling in *Minick I* is dispositive of the instant appeal on this question.

**II**

Appellant also contends that the trial court committed reversible error by permitting the government to introduce testimony concerning certain parole documents belonging to appellant. Upon review of the relevant evidence, *see Page v. United States*, 438 A.2d 195, 196 (D.C.1981), we conclude that the probative value of that evidence outweighed any prejudicial impact

it might have had on appellant's ability to receive a fair trial.

The facts relevant to this issue are as follows: Within approximately one hour of the estimated time of the victim's rape and murder, police officers searching the scene discovered appellant's wallet lying adjacent to a tennis court, approximately twenty-five feet from the victim's body. In the wallet, police found a driver's license bearing appellant's name and address, and appellant's parole papers.[3] In the absence of any eyewitnesses to the actual crime, or other direct evidence, this wallet became an important aspect of the government's proof against appellant. In this regard, the government proffered certain witnesses who saw appellant in possession of the wallet and the parole papers hours before the rape and murder.

From the outset of the trial proceedings, defense counsel objected to introduction of the parole papers. In light of counsel's refusal to stipulate to the presence of the papers in appellant's wallet on the night in question, and on government counsel's agreement that the court could give an immediate cautionary instruction on the proper use of the papers by the jury, the trial court issued a preliminary ruling that the government could elicit testimony concerning the papers.

During his opening statement, defense counsel specifically alluded to his intention to dispute the government's claim that certain witnesses saw appellant in possession of the wallet a few hours before the incident occurred. Defense counsel stated that

> the witnesses that were with Mr. Willie Lee Minick hours before this happened will tell you that what they saw was a plastic container containing photographs.

Photographs of Mr. Minick's friends and family, that's what they saw. Indeed you'll learn that Mr. Minick's wallet had been missing for several days prior to his arrest.

Prior to the testimony of two government witnesses, Kevin Taylor and Ronald Wilson, the defense renewed its motion to preclude any reference to the parole papers. In response, the government proffered that Mr. Taylor would testify that he remembered seeing appellant's wallet on the night of the murder because he remembered noticing that the wallet contained parole papers. The government argued that testimony concerning the papers was highly probative of Taylor's ability to remember seeing the wallet that evening, a matter put in issue by defense counsel's opening statement. When the trial court asked defense counsel whether they intended, as indicated by their opening statement, to present evidence that appellant's wallet was missing prior to the murder, defense counsel replied, "[w]e have testimony from a witness" to that effect. The trial court then ruled that the government could elicit testimony concerning the parole papers. Kevin Taylor subsequently testified in accordance with the government's proffer.[4] Following a vigorous cross-examination, in which defense counsel suggested that Taylor had lied to curry favor with the government, the prosecutor called Ronald Wilson as a witness. Wilson testified that, while he did not specifically recall seeing appellant's wallet on the date in question, he did recall seeing appellant's parole papers that evening. Wilson thus bolstered the credibility of Taylor's testimony. Significantly, as soon as each witness mentioned "parole papers" the trial court gave the jury a cautionary instruction that any evidence re-

---

**3.** The wallet also contained the personal identifications of certain other individuals. These effects were the proceeds from robberies for which appellant was later convicted.

**4.** During Taylor's testimony, the trial court again asked defense counsel at a bench conference whether it was the defense's position that appellant's wallet was missing prior to appellant's encounter with Mr. Taylor. Again, defense counsel stated that that was their position.

garding the parole papers was being admitted "solely ... [and for the] very limited purpose of [showing] the circumstances surrounding this witness' testimony as to when he saw the wallet."

Appellant now claims that it was error to admit this testimony concerning the parole documents because it constituted "other crimes" evidence, which was inadmissible unless and until appellant "opened the door" through cross-examination of the government's witness, or by putting his own character into evidence.

■ It is well established that when testimony alluding to other criminal behavior is introduced for a purpose other than to show mere criminal propensity, the decision whether the evidence is admissible on grounds that it's prejudicial effect is outweighed by its probative value, is committed to the discretion of the trial court, and will not be reversed absent an abuse of discretion. *See Hawkins v. United States,* 482 A.2d 1230, 1232 (D.C.1984); *Johnson v. United States,* 452 A.2d 959, 960 (D.C. 1982); *see also United States v. Williamson,* 482 F.2d 508, 514 (5th Cir.1973). Thus, while parole papers in general imply the existence of a prior criminal record, this implication alone does not automatically require their exclusion at trial. We conclude, that under the totality of the circumstances presented here, admission of the evidence concerning the parole papers was not an abuse of discretion.

As a threshold matter, we agree with appellee that evidence concerning the parole papers was not introduced to show appellant's bad character or propensity to commit crimes. Rather, it was presented as highly probative evidence of a material fact in issue, to wit, whether the wallet found by the police near the victim belonged to appellant. *See Panzavecchia v. Wainwright,* 658 F.2d 337, 341 (5th Cir. 1981). Both Taylor and Wilson testified that the parole papers found in the wallet at the scene of the crime were the same papers appellant had shown to them earlier that evening. Such testimony linked appellant to the crime scene, and thus, was evidence of appellant's identity as the victim's assailant. *See United States v. Day,* 192 U.S.App.D.C. 252, 263–65, 591 F.2d 861, 871–73 (1978). Moreover, this is not a case where the government had ample other evidence establishing the identity of the assailant, thus decreasing the marginal probative value of the wallet and the parole papers. On the contrary, proving ownership of the wallet found at the scene of the crime, and showing that appellant was in possession of the wallet shortly before commission of the crime, were essential parts of the government's case.

■ Indeed, Mr. Taylor's and Mr. Wilson's testimonies that they saw the wallet and the parole papers in appellant's possession earlier on the evening of the crime, was necessitated in large part by the defense proffer that the wallet had been lost a few weeks before the night of the incident. The witnesses' specific references to a detail like the parole papers added "narrative veracity" to their testimony and reinforced their credibility to recall the events on the evening in question. *See United States v. Williamson, supra,* 482 F.2d at 514. We disagree with appellant's contention that the trial court could not rule on the admissibility of the parole papers based on the defense proffer, but had to wait until appellant *actually* introduced evidence impeaching the credibility of the government's witness. Such a position is untenable. It would effectively allow the defense to control the admission of relevant evidence at trial based on its own tactical considerations. In the instant case, notwithstanding its initial proffers, the defense, for reasons undisclosed, chose not to introduce evidence showing that the wallet had been lost weeks before the day of the

rape and murder.[5] Nevertheless, the court repeatedly was advised by defense counsel that such evidence would be produced, and ruled accordingly. Under these circumstances, we do not conclude that the court's ruling was an abuse of discretion.

Finally, any prejudicial impact that the admission of the parole papers could have had on appellant was mitigated by the cautionary instructions which the trial court gave to the jury on the use of the evidence. *See United States v. Moore,* 235 U.S.App. D.C. 381, 385, 732 F.2d 983, 987 (1984). Potential prejudice was further diminished because the parole papers which were shown to the jury did not contain any reference to the crime appellant had committed.

In sum, we conclude that the possibility of prejudice from the admission of the parole papers was minimal when weighed against its probative value. Finding none of appellant's arguments on appeal persuasive, we affirm his convictions.

*Affirmed.*

MACK, Associate Judge, concurring:

I write separately only to emphasize that while I am bound to adhere to the mandate of *Minick I,* I agree with the appellant that the case was wrongly decided. *See Dorman v. United States,* 140 U.S.App.D.C. 313, 435 F.2d 385 (1970) (en banc).

---

**5.** We observe that even though appellant never produced a witness to testify that the wallet had been lost, he was given ample opportunity to cross-examine Mr. Taylor and Mr. Wilson.