**LENKIN COMPANY MANAGEMENT,
INC., Petitioner,**

v.

**DISTRICT OF COLUMBIA RENTAL
HOUSING COMMISSION,
Respondent.**

**David Alexander, Intervenor.**

No. 93–AA–578.

District of Columbia Court of Appeals.

Argued April 16, 1996.

Decided May 23, 1996.

Jack C. Sando, Bethesda, MD, for petitioner.

David Alexander, pro se.

John Payton, Corporation Counsel at the time, and Charles L. Reischel, Deputy Corporation Counsel, filed a Statement in Lieu of Brief, Washington, for respondent.

Before FERREN, SCHWELB, and FARRELL, Associate Judges.

FARRELL, Associate Judge:

In *Alexander v. District of Columbia Rental Hous. Comm'n,* 542 A.2d 359 (D.C. 1988) (*Alexander I* ), a division of this court held that a *pro se* attorney who prevails in litigation under the District of Columbia Rental Housing Act is presumptively entitled to attorney's fees. The court remanded the case to the Rental Housing Commission for application of the presumption and, if necessary, determination of the proper amount of fees. *Id.* at 361–62. This petition for review following remand presents the single issue of whether the holding of *Alexander I* has been undermined by a later Supreme Court decision such that the present division should reverse that holding in the same case. In the circumstances presented, we hold that the law of the case prevents our doing so. We therefore affirm the award of attorney's fees by the agency.

I.

David Alexander, an attorney proceeding *pro se,* prevailed at the agency level on his claim that his landlord, petitioner Lenkin Company Management (Lenkin), violated the statutory ban against implementing two rent increases within a six-month period. *See* D.C.Code § 45–1519(g) (1981). Alexander

then sought attorney's fees under D.C.Code § 45–1592. While that application was pending, this court in *Ungar v. District of Columbia Rental Hous. Comm'n*, 535 A.2d 887 (D.C.1987), held that D.C.Code § 45–2592, the attorney's fee provision of the successor statute,[1] "creates a presumptive award of attorney's fees to the prevailing party—which may be withheld, in the court's discretion, if the equities indicate otherwise." *Id.* at 892. In *Alexander I*, relying on a decision interpreting the right to attorney's fees in federal civil rights litigation, we held that the presumption established in *Ungar* applied equally to attorney *pro se* tenants; we remanded to the Commission for application of the presumption and calculation of the amount of fees as appropriate for Alexander's work before the agency. *Alexander I*, *supra*, 542 A.2d at 361–62. The Commission in turn remanded to the Rental Accommodation and Conversion Division for a hearing, and in September 1991 a hearing examiner awarded Alexander $8,488.00 in attorney's fees for his work at the agency level.[2]

Before the hearing examiner issued his decision and order, the Supreme Court decided *Kay v. Ehrler*, 499 U.S. 432, 111 S.Ct. 1435, 113 L.Ed.2d 486 (1991). It held unanimously that an attorney who represents himself in a federal civil rights action may not be awarded attorney's fees under 42 U.S.C. § 1988. Lenkin appealed the hearing examiner's award to the Commission on the ground, *inter alia*, that the examiner had failed to follow the Supreme Court's holding in *Kay* (Lenkin had preserved that point before the examiner). The Commission affirmed the examiner's order on the ground that the "law of the case" doctrine required adherence to *Alexander I* "unless and until it is reversed or modified by the [District of Columbia Court of Appeals] sitting en banc." Lenkin then filed the instant petition.

## II.

There is no question that *Kay*, although it concerned a federal statute (the Civil Rights Attorney's Fees Awards Act of 1976, Pub.L. 94–559, 90 Stat. 2641, as amended, 42 U.S.C. § 1988), bears directly upon the correctness of the reasoning in *Alexander I*. That is because, in upholding the permissibility of an attorney's fee award to attorney *pro se* tenants under the District's Rental Housing Act, this court relied entirely upon the reasoning of a federal court which had held attorney's fees to be available to attorney *pro se* litigants under 42 U.S.C. § 1988. *Alexander I*, *supra*, 542 A.2d at 360–61 (citing and discussing with approval *Duncan v. Poythress*, 777 F.2d 1508 (11th Cir.1985) (en banc), *cert. denied*, 475 U.S. 1129, 106 S.Ct. 1659, 90 L.Ed.2d 201 (1986)).[3] As Alexander concedes here, however, the Supreme Court in *Kay*, in holding that fees may not be awarded to a *pro se* attorney under 42 U.S.C. § 1988, implicitly rejected the analysis of *Duncan v. Poythress*. In the wake of *Kay*, a division of this court has expressed "doubt" whether "*Alexander [I]* would have been decided the way it was had *Kay* been available for consideration by the Court." *McReady v. Department of Consumer & Regulatory Affairs*, 618 A.2d 609, 614 (D.C.1992). *See also Donahue v. Thomas*, 618 A.2d 601, 606 (D.C.1992) ("The rationale of *Alexander [I]* rested exclusively on *Duncan v. Poythress* .... The Supreme Court's decision in *Kay* ..., however, effectively overrules *Duncan* ...."). *McReady* and *Donahue* each interpreted the attorney's fee provision of the District of Columbia Freedom of Information Act; each followed *Kay's* reasoning and de-

---

1. The 1980 Rental Housing Act, which was codified at D.C.Code §§ 45–1501 to –1597 (1981), expired at the end of 1984. The District of Columbia Council reauthorized the statute as the Rental Housing Act of 1985, presently codified at D.C.Code §§ 45–2501 to –2594 (1990 and Supp. 1995).

2. The Commission ultimately declined to award Alexander fees for his work on the petition filed with this court.

3. Since *Alexander I* we have again observed "the similarity between D.C.Code § 45–2592 and the provisions of the [federal] Civil Rights Act ... with respect to attorney's fees." *Hampton Courts Tenants' Assoc. v. District of Columbia Rental Hous. Comm'n*, 573 A.2d 10, 12 (D.C. 1990); *see also Tenants of 500 23rd Street, N.W. v. District of Columbia Rental Hous. Comm'n*, 617 A.2d 486, 489 (D.C.1992) (noting "the remarkable similarities of language and intent between the attorney's fee provisions of" the Civil Rights Act and the Rental Housing Act).

clined to follow *Alexander I* in holding (respectively) that neither a *pro se* attorney plaintiff nor a *pro se* non-attorney plaintiff may recover fees as a prevailing party under the District's FOIA.

## III.

The issue before us, however, is not whether the court in *Alexander I*, informed by *Kay*, would have decided the attorney's fee issue differently, nor whether *Alexander I* is persuasive any longer in construing an unrelated statute such as the District's FOIA. Indeed, the issue is not whether in an unrelated case interpreting D.C.Code § 45–2592 the court would adhere to *Alexander I*'s holding despite *Kay*, although, as will be evident, that issue is very relevant to ours. The question before us is whether Alexander himself should be denied the fruits of *Alexander I* because the *Kay* decision intervened during the remand of the case. The answer depends on the doctrine of law of the case.

▮▮ That doctrine teaches that "once the court has decided a point in a case, that point becomes and remains settled unless or until it is reversed or modified by a higher court." *Kritsidimas v. Sheskin*, 411 A.2d 370, 371 (D.C.1980). As applicable here, the doctrine "precludes reopening questions resolved by an earlier appeal in the same case." *Lynn v. Lynn*, 617 A.2d 963, 969 (D.C.1992) (citations omitted). Lenkin does not contend that the holding of *Alexander I* was "reversed" by the Supreme Court in *Kay*. "On a question of purely local law," such as interpretation of the District of Columbia Rental Housing Act, "this court is undeniably the final arbiter." *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 633 (D.C.1988), *cert. denied*, 490 U.S. 1116, 109 S.Ct. 3178, 104 L.Ed.2d 1040 (1989). Lenkin instead points to the fact that law of the case is "a rule of practice," not affecting the court's power, *Morse v. Morse*, 213 A.2d 581, 583 (D.C. 1965), and has limitations. Those very limitations, however, exhibit the reluctance of courts to depart from the doctrine. As we stated in *Morse*, the doctrine may be disregarded "in a clear case showing that the

earlier adjudication was plainly wrong and that its application would work a manifest injustice." *Id. Accord, Mayflower Hotel Stockholders Protective Comm. v. Mayflower Hotel Corp.*, 89 U.S.App.D.C. 171, 174, 193 F.2d 666, 669 (1951). The Supreme Court similarly has stated that a court "should be loathe" to revisit a prior decision "in the absence of extraordinary circumstances such as where the initial decision was 'clearly erroneous and would work a manifest injustice.'" *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817, 108 S.Ct. 2166, 2178, 100 L.Ed.2d 811 (1988) (quoting *Arizona v. California*, 460 U.S. 605, 618 n. 8, 103 S.Ct. 1382, 1391 n. 8, 75 L.Ed.2d 318 (1983)). Consistent with this principle, we have stated that the law of the case doctrine "is limited in application only where (1) the first ruling has little or no finality, or (2) the first ruling is clearly erroneous in light of newly presented facts or a change in substantive law." *Minick v. United States*, 506 A.2d 1115, 1117 (D.C.) (citing *Kritsidimas, supra*, 411 A.2d at 372), *cert. denied*, 479 U.S. 836, 107 S.Ct. 133, 93 L.Ed.2d 76 (1986).

▮▮ Lenkin wisely abandoned at oral argument the suggestion that *Alexander I* lacked finality on the issue whether a *pro se* attorney is presumptively entitled to fees as a prevailing party under the Rental Housing Act. The remand in the case was premised on that presumption.[4] Lenkin also could not fairly maintain that giving Alexander the benefit of the issue decided in his case would "work a manifest injustice" in light of *Kay*. A glance at *Kay* itself shows why. In holding that Congress did not intend *pro se* attorneys to recover fees under the Civil Rights Act, the Supreme Court acknowledged that neither of the two primary tools of statutory interpretation—"the text of the statute or its legislative history"—"provides a clear answer." 499 U.S. at 435, 111 S.Ct. at 1437. Instead the Court looked to "the overriding statutory concern" of the fee-shift provision, which was "the interest in obtaining independent counsel for victims of civil rights violations." *Id.* at 437, 111 S.Ct. at 1437. The Court concluded:

---

**4.** Lenkin similarly does not rely on newly pre-   sented facts.

A rule that authorizes awards of counsel fees to *pro se* litigants—even if limited to those who are members of the bar—would create a disincentive to employ counsel whenever such a plaintiff considered himself competent to litigate on his own behalf. The statutory policy of furthering the successful prosecution of meritorious claims is better served by a rule that creates an incentive to retain counsel in every such case.

*Id.* at 438, 111 S.Ct. at 1438. In thus adopting a "rule" that "better served" the "statutory policy" or "overriding statutory concern," the Court can scarcely be said to have implied that the contrary rule (or statutory reading) exemplified by *Duncan v. Poythress, supra,* was manifestly unjust in operation. *Kay* therefore allows no similar impeachment of *Alexander I.*

Lenkin argues, nonetheless, that *Alexander I* found decisive support in *Duncan's* interpretation of the federal statute, and that *Kay* represents an unmistakable "change in substantive law," *Minick, supra,* 506 A.2d at 1117, by rejecting that interpretation. Admittedly, *Alexander I* (and *Ungar* before it) saw an identity of purpose between the two attorney's fee provisions. *See also* note 3, *supra.* But we do not think that a supervening interpretation of an unrelated statute constitutes the required change in substantive law merely because we looked to that statute for persuasive guidance in interpreting the Rental Housing Act.

Perspective is gained if we consider this court's rule (followed in similar form by nearly every appellate court that sits in panels) governing rejection of a prior decision of the court in another case. That rule is that "no division of this court will overrule a prior decision of this court . . . and that such result can only be accomplished by this court en

banc." *M.A.P. v. Ryan,* 285 A.2d 310, 312 (D.C.1971) (footnote omitted). Of course, we have recognized that *M.A.P.* does not "oblige[ ] us to follow, inflexibly, a ruling whose philosophical basis has been substantially undermined by subsequent Supreme Court decisions." *Frendak v. United States,* 408 A.2d 364, 379 n. 27 (D.C.1979). A panel decision interpreting the Fourth Amendment, for example, would undoubtedly yield to a later Supreme Court decision on point. More problematical is whether, by itself, a later Supreme Court interpretation of a federal rule of procedure identical to a Superior Court rule [5] would require a division to reject an earlier interpretation of the local rule. *See Lee v. United States,* 668 A.2d 822, 828–29 (D.C.1995) (rejecting previous interpretation of Super. Ct.Crim. R. 31(c) (1995) in light of later Supreme Court interpretation of corresponding federal rule *but also* in light of an "[ir]reconcil[able]" en banc decision of this court). In the present case, however, we are not concerned with "*clearly controlling* doctrine later enunciated by the Supreme Court." *Frendak, supra,* 408 A.2d at 379 n. 27 (emphasis added) (citing *Ralpho v. Bell,* 186 U.S.App.D.C. 368, 390, 569 F.2d 607, 629 (1977)): the Rental Housing Act is not the Civil Rights Act. It is therefore far from apparent that a division in another case would be empowered to treat *Alexander I* as overruled by *Kay.* Yet if we do so in this case we risk arrogating to ourselves authority to do under a law of the case exception what we could only doubtfully do, if at all, under the kindred "law of the court" or en banc rule.[6]

At all events, for a change in substantive law to justify departure from the law of the case, it must render the previous decision "clearly erroneous." *Minick, supra,* 506 A.2d at 1117. In essence, all *Kay* did was to say that *Duncan v. Poythress* (and similar

---

5. "When a local rule and a federal rule are identical, or nearly so, we will construe the local rule in a manner consistent with the federal rule to the extent possible under binding precedent, and we will look to federal court decisions interpreting the federal rule as persuasive authority in interpreting the local rule." *Montgomery v. Jimmy's Tire & Auto Ctr.,* 566 A.2d 1025, 1027 (D.C. 1989).

6. *Cf.* 1B James W. Moore, Moore's Federal Practice ¶ 0.404 [4.–5], at II–25 (2d ed. 1995) (noting that relationship between the en banc overruling rule and "the practice under the doctrine of the law of the case is not altogether clear . . . as to whether the effect of the in banc overruling rule is to preclude departure from the law of the case on the ground that the previous decision was clearly wrong and it would be unjust to let it stand").

decisions), looked to analogously by *Alexander I*, had misread the purpose or "statutory policy" of the Civil Rights Act. Although our decisions, including *Alexander I*, have strongly equated that purpose with the intent of the Rental Housing Act's attorney's fee provision, we do not believe this court—en banc or a division—could properly overrule *Alexander I* without a fresh examination of the latter purpose, something on which *Kay* of course has no direct bearing. It might well be that, as before, we would find no reason to differentiate between the two provisions and their scope, so that *pro se* prevailing attorneys would be ineligible for fees; we express no opinion on that point.[7] But the very need to undertake that inquiry persuades us that *Alexander I*'s holding, whatever may be said of its reliance on federal decisions, is not made clearly erroneous by *Kay*, and thus should not be overruled in the same case. Reexamination of *Alexander I* must await another case.

*Affirmed.*

---

**7.** The debate between the majority and the dissenting judge in *McReady, supra,* however, suggests that it is at least a point on which reasonable minds can disagree. *Compare* 618 A.2d at 613–14 (majority opinion) *with id.* at 626–27 & n. 33 (Ferren, J., dissenting).