*Notice: This opinion is subject to formal revision before publication in the Atlantic and Maryland Reporters. Users are requested to notify the Clerk of the Court of any formal errors so that corrections may be made before the bound volumes go to press.*

## DISTRICT OF COLUMBIA COURT OF APPEALS

Nos. 22-CV-0527 & 22-CV-0583

ITZHAK SHALOM, APPELLANT/CROSS-APPELLEE,

V.

JAMIE DAVIS SMITH and DANIEL SMITH, APPELLEES/CROSS-APPELLANTS,

and

DSI CONTRACTORS, LLC, and DEBRA ROTHMAN SHALOM, APPELLEES.

Appeals from the Superior Court
of the District of Columbia
(2018-CA-002101-B)

(Hon. Anthony C. Epstein, Hon. Yvonne M. Williams &
Hon. Juliet J. McKenna, Trial Judges)

(Submitted June 7, 2023                    Decided November 22, 2023)

*Itzhak Shalom*, pro se.

*Vanessa Carpenter Lourie* was on the brief for appellees/cross-appellants.

*David C. Haresign* was on the brief for appellees.

Before BECKWITH and ALIKHAN, *Associate Judges*, and RUIZ, *Senior Judge*.

ALIKHAN, *Associate Judge*: Appellees/cross-appellants Jamie Davis Smith

and Daniel Smith brought this action in the Superior Court of the District of

Columbia alleging that DSI Contractors, LLC ("DSI"), Itzhak Shalom (a DSI employee), and Debra Rothman Shalom (Mr. Shalom's spouse and DSI's sole owner) breached their home renovation contract with the Smiths and accepted advance payments for home improvement work while DSI was not licensed in the District of Columbia in violation of District law. DSI consented to judgment in the full amount sought by the Smiths. The court dismissed all claims against Ms. Shalom, denied Mr. Shalom's motion for summary judgment, and ultimately found Mr. Shalom jointly and severally liable with DSI for the entire sum of the advance payments, plus fees and costs.

On appeal, Mr. Shalom argues that the trial court should have granted his motion for summary judgment, and the Smiths challenge the court's dismissal of their claims against Ms. Shalom. We reverse the court's judgment against Mr. Shalom and affirm its dismissal of the claims against Ms. Shalom. We do so for a single reason: neither Mr. Shalom nor Ms. Shalom can be held personally liable under the District laws at issue here because they did not "accept" any advance payment.

## I.  Factual Background and Procedural History

The Smiths approached DSI to renovate portions of their house in 2017. Mr. Shalom served as the manager, general contractor, and primary supervisor for

the project, and he presented the Smiths with a contract for the work. The Smiths signed the contract, as did Mr. Shalom as DSI's representative.

DSI began work on the renovations. Throughout the process, the Smiths made payments to DSI in advance of the project's completion. All told, these payments amounted to $344,550.00. The Smiths contend that they noticed defects in the work during the renovation process, and they eventually terminated DSI.

The Smiths then filed suit against DSI, Mr. Shalom, and Ms. Shalom, asserting claims for breach of contract; violation of one of the District's home improvement license regulations, 16 D.C.M.R. § 800.1; and violation of a provision in the District's Consumer Protection Procedures Act ("CPPA"), D.C. Code § 28-3904.[1] Mr. Shalom and Ms. Shalom moved to dismiss the contract claim against them, pointing out that they had not been parties to DSI's contract with the Smiths. In the same motion, Ms. Shalom further moved to dismiss the remaining two claims against her, arguing that she had not taken any action to "require[] or accept[] any payment" under the contract. The court granted that motion in full.

---

[1] The Smiths also sued a subcontractor involved in the project, but those claims were settled out of court. Facts concerning that subcontractor are not relevant to this appeal.

The case progressed, and Mr. Shalom moved for summary judgment on the remaining two claims against him. The court denied his motion, however, opining that the Smiths had presented "enough evidence" that Mr. Shalom had participated in DSI's wrongdoing to hold him personally liable. Thereafter, DSI consented to judgment for the full amount the Smiths had sought against it ($349,550) plus $35,282.32 in fees and costs, for a total of $384,832.32, plus post-judgment interest and court costs.[2]

The case proceeded to a bench trial on the Smiths' two claims against Mr. Shalom. The court found Mr. Shalom jointly and severally liable with DSI for the entire $344,550.00 that the Smiths had paid for the work and personally liable for an additional $44,348.36 in fees and costs, for a total of $388,898.36. Mr. Shalom appealed the judgment against him and the Smiths cross-appealed the dismissal of the claims against Ms. Shalom.[3]

---

[2] DSI has not yet paid any of the judgment.

[3] The Smiths contend that Mr. Shalom's notice of appeal was untimely because it was filed thirty-one days after the court entered judgment. *See* D.C. App. R. 4(a)(1). But when "a judgment or final order is signed or decided outside the presence of the parties and counsel"—as it was here—"such judgment or order will not be considered as having been entered . . . until the fifth day after the Clerk . . . has made an entry on the docket reflecting service of notice by that Clerk." *Id.* R. 4(a)(6). Mr. Shalom's notice of appeal was timely under Rule 4(a)(6).

## II.     Discussion

Mr. Shalom argues that the trial court should have granted his motion for summary judgment because he was merely acting as DSI's agent throughout the renovation process and cannot be held personally liable for violating Section 800.1 or the CPPA.[4]  The Smiths, for their part, present a similar but opposing argument: that the court erred in dismissing Ms. Shalom from this matter because she *had* sufficiently participated in the scheme to be held personally liable.[5]

All parties' positions appear to reflect a misunderstanding of our law regarding Section 800.1.  It is certainly true, as the Smiths argue, that "corporate officers are personally liable for torts which they commit, participate in, or inspire, even though the acts are performed in the name of the corporation." *Luna v. A.E. Eng'g Servs., LLC*, 938 A.2d 744, 748 (D.C. 2007) (internal quotation marks

---

[4] As it stands on appeal, the Smiths' CPPA claim is predicated on a violation of 16 D.C.M.R. § 800.1, because D.C. Code § 28-3904(dd) prohibits violation of "any provision of title 16 of the District of Columbia Municipal Regulations." Although the Smiths had raised additional CPPA claims in the trial court, they affirmatively disclaimed at trial any entitlement to damages other than the amount they paid to DSI, and they advance only a Section 28-3904(dd) claim on appeal.

[5] On appeal, the Smiths do not challenge the dismissal of the breach of contract claim against Mr. Shalom.  To the extent they are trying to revive the contract claim against Ms. Shalom, they have forfeited that argument by failing to develop it beyond its bare bones. *Comford v. United States*, 947 A.2d 1181, 1188 (D.C. 2008) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived." (alteration in original)).

omitted).  But the Smiths assert only claims for disgorgement here.  *See C.A. Harrison Cos. v. Evans*, 266 A.3d 979, 986 (D.C. 2022) (explaining that disgorgement is a proper remedy for a violation of Section 800.1); *Remsen Partners, Ltd. v. Stephen A. Goldberg Co.*, 755 A.2d 412, 418 (D.C. 2000) (noting that under Section 800.1, a homeowner may force an unlicensed home improvement contractor to return any advance payment it remitted to the contractor).  Disgorgement sounds in principles of unjust enrichment and restitution—which are quasi-equitable doctrines—not in tort.  *See Thanos v. District of Columbia*, 109 A.3d 1084, 1094 (D.C. 2014) ("Instead of compensating victims, as damages do, . . . disgorgement serves to prevent unjust enrichment.").

This distinction matters.  Restitution "measur[es] liability by the extent of the benefit" conferred, whereas "[t]he law of torts . . . measur[es] liability by the extent of the harm" done.  Restatement (Third) of Restitution and Unjust Enrichment § 1 cmt. d (Am. L. Inst. 2011).  When claims sound in restitution then—as the Smiths' do here—there can be no liability where no benefit is received.  *See id.* § 2 cmt. a ("[T]he receipt of a benefit . . . is a necessary . . . condition of liability in restitution.").  We have thus stated that an action for disgorgement under Section 800.1 cannot lie against a party who has not personally accepted payment.  *Woodruff v. McConkey*, 524 A.2d 722, 725 (D.C. 1987).  In *Woodruff*, we clarified—in the context of the statute of limitations—that although a violation of Section 800.1

technically occurs when an unlicensed home improvement contractor enters into a home improvement contract that requires advance payment,[6] a cause of action under Section 800.1 does not accrue until the contractor has actually accepted a payment. *Id.* This is so because "until that time there is no money to recover, and hence no injury or cause of action." *Id.*

We applied this principle again in *C.A. Harrison Cos.* There, an unlicensed home improvement contractor had been ordered by the trial court to disgorge two sets of advance funds: the homeowners' payments directly to the contractor and the homeowners' payments to other entities involved in the home improvement contract. 266 A.3d at 986. We reversed the trial court's decision in part, holding that while the contractor was certainly liable for the monies it had received, it was not liable for payments that the homeowners had remitted directly to other entities. *Id.*

*Woodruff* and *C.A. Harrison Cos.* shield the Shaloms because the Smiths did not allege that Ms. Shalom ever "accepted" any payment, nor did they proffer evidence at trial that Mr. Shalom did. At most, the Smiths established that they

---

[6] Section 800.1 of the Home Improvement Licensing Regulation provides, in relevant part, that no unlicensed home improvement contractor "shall require or *accept* any payment for a home improvement contract . . . in advance of the full completion of all work required to be performed under the contract." 16 D.C.M.R. § 800.1 (emphasis added).

handed Mr. Shalom checks that were made out to DSI. That does not constitute "acceptance" under Section 800.1.

*Truitt v. Miller*, 407 A.2d 1073 (D.C. 1979), does not alter this result. The court there considered in relevant part whether to hold the owner and operator of a company jointly and severally liable, alongside the company itself, under the predecessor regulation to Section 800.1. 407 A.2d at 1080. Mr. Truitt, the owner, had caused the corporation's charter to lapse before he entered into the pertinent home improvement contract. *Id.* Thus, as a technical matter, the corporation had not actually entered into the contract because it was defunct. *Id.* In that specific circumstance, we concluded that it was "only just" to hold Mr. Truitt "personally [liable] to a contract which he had no authority to make in a corporate capacity."[7] *Id.* The exception we outlined there makes good sense. Where the corporation did not exist when the contract was executed and when all early payments were tendered, and where the court retroactively held the now-active corporation to the agreement, it was impossible to tell who had "accepted" the money. Here, on the other hand,

---

[7] Although we noted that we were holding Mr. Truitt personally liable "to [the] contract," this was imprecise wording because the court had already recognized earlier in the opinion that the contract was "void" because it had been "made in violation of [Section 800.1]." *Truitt*, 407 A.2d at 1080; *see C.A. Harrison Cos.*, 266 A.3d at 985.

there is no dispute as to the party that "accepted" the Smiths' payments: DSI, and DSI alone.

Nor does *Hume v. Watson*, 680 F. Supp. 2d 48 (D.D.C. 2010), help the Smiths. The contractor there, Mr. Watson, had pled guilty to accepting prepayment in violation of 16 D.C.M.R. §§ 800.1 and 800.7. 680 F. Supp. 2d at 49. Mr. Hume then sued Mr. Watson civilly for the same conduct and moved for summary judgment, arguing that Mr. Watson's plea established the necessary elements for a civil case against him as well. *Id.* at 49-50. The court agreed with Mr. Hume, reasoning in relevant part that Mr. Watson's admission in the criminal case that he had "accepted" payment put the matter to rest. *Id.* at 51. Although the *Hume* court seems to have held Mr. Watson personally liable for payments he accepted solely on behalf of his company, the court's reasoning rested on the fact that Mr. Watson had *admitted* to accepting the payment. *Id.* The court thus did not have occasion to consider the finer contours of when an agent "accepts" funds on behalf of a principle for purposes of Section 800.1. *Id.*; *see PHCDC1, LLC v. Evans & Joyce Willoughby Tr.*, 257 A.3d 1039, 1045 (D.C. 2021) (noting that language in an opinion is not a holding when "[t]he judicial mind was not asked to focus upon, and the opinion did not address, the point at issue" (alteration in original) (quoting *Morales v. United States*, 248 A.3d 161, 168 (D.C. 2021))). But even if it had, a federal district court decision is not binding on this court, and it holds little persuasive force on a question

of the proper interpretation of District law. *See Lenkin Co. Mgmt., Inc. v. D.C. Rental Hous. Comm'n*, 677 A.2d 46, 48 (D.C. 1996) ("On a question of purely local law, . . . this court is undeniably the final arbiter." (quoting *Meiggs v. Associated Builders, Inc.*, 545 A.2d 631, 633 (D.C. 1988))).[8]

### III. Conclusion

For the foregoing reasons, the Superior Court's dismissal of the claims against Ms. Shalom is affirmed, its judgment against Mr. Shalom is reversed, and the case is remanded for entry of summary judgment in favor of Mr. Shalom on counts two and three of the complaint. The judgment against DSI remains untouched.

*So ordered.*

---

[8] The Smiths also argue that the trial court improperly failed to grant them leave to amend their complaint under Super. Ct. Civ. R. 15(a)(2). But they do not point us to anywhere in the record where they sought leave to amend and, "[a]bsent exceptional circumstances, a [trial] court has no obligation to invite a plaintiff to amend his or her complaint when the plaintiff has not sought such amendment." *Miller-McGee v. Wash. Hosp. Ctr.*, 920 A.2d 430, 438 (D.C. 2007) (alterations in original) (quoting *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 242 (1st Cir. 2004)).